### MILLER v. CHICAGO, B. & Q. RY. CO.

(Circuit Court, D. Colorado. December 29, 1894.)

No. 3,104.

NEGLIGENCE—STIPULATIONS AGAINST LIABILITY.

A railway company organized a relief department among its employés, for the purpose of giving pecuniary aid to those who might be injured or sick. The funds of said department were provided by contributions from the members, the company agreeing to make up any deficiency which might occur in any year. The rates of contribution by the members were such that a deficiency would seldom occur, and in fact was a very rare occurrence. In the application for membership in the relief department and in the contract of insurance a clause was inserted providing that, in consideration of the payments by the company, the acceptance of benefits by a member should operate as a release of all claims for damages against the company. Plaintiff, who was a member of the relief department, received injuries in consequence of the negligence of the railway company, and thereafter accepted benefits as a member of the relief department. *Held*, that plaintiff's right of action against the railway company to recover damages for such injury was not barred by the acceptance of such benefits.

This was an action by I. E. Miller against the Chicago, Burlington & Quincy Railway Company to recover damages for personal injuries. The defendant pleaded, among other things, an agreement by plaintiff to release in consideration of certain payments made on a contract of insurance. Plaintiff demurred to the answer.

O'Donnell & Decker, for plaintiff.

Wolcott & Vaile and H. F. May, for defendant.

HALLETT, District Judge. Action by a fireman to recover for an injury to his person received while in the service of the company. In the first and second defenses the defendant makes some specific and general denials of matters alleged in the complaint. The third answer is, in substance, that the defendant and its employés organized an association for the relief of employés of the company injured while in the service of the company, known as the Burlington Voluntary Relief Department. The nature and purpose of the organization are not very fully stated in the answer, but counsel has furnished

a copy of the articles of association, and its rules and regulations, which may be regarded as supplying all details necessary to be considered. From this it appears that the association mentioned as the Burlington Voluntary Relief Department is composed of seven similar organizations, organized by seven or more different railroad corporations in different states and territories, which corporations make up the Burlington system. It is modeled upon the relief department of the parent company, which is known as the Chicago, Burlington & Quincy Relief Department, and it accepts the rules and regulations of the latter as its own. The composite organization here in question was formed from all the others for convenience of administration merely, without changing the character of any of the constituent bodies. From the rules and regulations of the parent company it appears that the funds of the association are raised by contributions from employés, ranging from 75 cents to $3.75 per month, according to the amount earned by the contributing members. The first sum is paid by those who earn not exceeding $40 per month; the last sum by those who earn more than $100 per month. If any deficiency arises in the funds thus raised, the companies must make up the amount. The regulations on that subject are here quoted at length:

"(3) The relief fund will consist of voluntary contributions from employés, income derived from investments and from interest paid by the company, and appropriations by the company when necessary to make up deficiencies."

"(14) If during the period prior to the 1st day of January, 1892, or during any one of the successive periods of three years thereafter, the amount contributed by the members of the fund and received from other sources shall not be sufficient to meet the liabilities incurred for such period, the company shall pay the deficiency; and if at the end of any such period there shall be a surplus, after making due allowance for liabilities incurred and not paid, such surplus shall not be used to make up any deficiency in any other such period, but shall be used for the sole benefit of members of the relief fund in such manner as shall be determined by vote of two-thirds of the advisory committee, and approved by the board of directors."

In connection with this provision for paying a deficiency in the funds it should be remarked that the rates paid by members are manifestly intended to cover the cost of insurance, and the deficiency is a contingency not likely to happen. It does in fact happen sometimes, but the amounts thus paid by the companies are inconsiderable. In case of disability and loss of time from accident or sickness, employés who are members of the relief department receive certain sums weekly or monthly, according to the class in which they belong. There is also insurance upon the life of the employé in consideration of other and additional payments, which need not be mentioned in this connection. In the contract of insurance, and set out in the application for membership, there is a provision as follows:

"I also agree that, in consideration of the amounts paid and to be paid by said company for the maintenance of the relief department, the acceptance of benefits from the said relief fund for injury or death shall operate as a release and satisfaction of all claims for damages against said company arising from such injury or death, which could be made by me or my legal representatives."

This clause forms the basis of defendant's third answer. It is alleged that plaintiff was a member of the relief department, and—

"That the acceptance of benefits from the said department for injury should operate as a release and satisfaction of all claims for damages against the defendant company arising from or out of such injuries; that the said plaintiff has subsequently received and accepted the benefits due to him by reason of his membership in said relief department on account of the injury complained of by him in his complaint herein, and the defendant company has paid to the plaintiff the amount of the benefits due to him by reason of his membership in the said relief department on account of said injury, and the same have been received by the plaintiff as benefits accruing to him by reason of said injury on account of his membership in said association. And more particularly the defendant alleges that there was paid by the said relief department to the said plaintiff, on account of said injury, benefits to the amount of $24.50, being the amount due for 49 days next after the 22d of August, 1890, at the rate of 50 cents a day, which was the rate to which the plaintiff was entitled as a member of said relief department; and there was also paid by said department the sum of $43 to certain physicians for care and surgical attendance upon the said plaintiff; and that the said relief department did all on its part to be done for and in behalf of the said plaintiff by virtue of his membership in the said department; whereby the defendant was released from any and all claims for damages against the defendant company arising in any way out of the injury of which he complains in his said complaint."

Upon demurrer to this answer we are to consider the nature and effect of this provision of the contract, and whether the acceptance of benefits by the plaintiff under this contract of insurance should bar this action for injuries received through the negligence of defendant. It is clear that what the plaintiff received from the relief department was only that for which he had paid from time to time from his monthly earnings. As already stated, the consideration mentioned, being the amounts paid and to be paid by the company for the maintenance of the relief department, is only a pretense. From motives of humanity, employers are compelled to have some care for the sick and injured in their service. In recent times various schemes have been adopted for getting the cost of this care and attendance from the persons employed. Some employers require their men to contribute to a hospital fund, from which the sick and injured in their service may be maintained; others insure the life and health of their servants in one or more of the many accident and casualty companies who make it their business to care for those who may be engaged in hazardous and dangerous service. Whatever method may be adopted, it is plain that any one who employs large numbers of men must be at some cost of time and money in respect to the care of their bodies, if not of their souls, to keep them in health, and cure their hurts. If the men can be induced to pay the cost of this either to the employer or to an insurance company, the employer is so far relieved of a heavy burden, which in most instances he ought not to bear. In ordinary sicknesses and in most cases of injury the men ought to pay the cost of their keep, of nursing, of medical attendance, and the like, because these things come without fault of the employer in the ordinary course of human infirmity. Therefore the employer ought not to be blamed for putting the burden of caring for the sick and the injured, in general, on

the shoulders of the men, where it properly belongs. In doing this, however, he should not seek to evade the responsibility imposed upon him by law for the consequence of his own negligence. The rule which requires an employer to respond in damages to his servants for his negligent acts is sound and wholesome. It ought not to be set aside on any pretense of waiver on the part of the party injured from doing something which he has a clear right to do. It is said that the employé is not bound to accept benefits from the relief fund, and, if he does accept them, with full knowledge that he waives his right of action, he ought to be bound by his act. The logic of the proposition should be differently stated. Having paid for benefits, upon what principle can he be required to renounce them? If, for illustration, plaintiff had taken a policy in some accident and casualty company, could he be required to give up his right of action against the railroad company on accepting benefits from the insurance company? I think not. And the fact that the railroad company has entered into the insurance business does not affect the question in any way whatever. In respect to this contract defendant is an insurance company, and, having received the premium demanded of plaintiff, the latter is fully entitled to the benefits which he received, independently of any question affecting his relations to the railroad company as an employé. Having paid for them, plaintiff is as much entitled to the benefits received by him under the contract of insurance as to his monthly wages for services rendered to the railroad company. It was long ago wisely held that an employer cannot relieve himself from responsibility for his negligent acts by any provision in the contract of employment, and so it has come to pass that the company could not make the receipt of wages a waiver of this sort of action. No more can it be said that payment and receipt of benefits under a contract of insurance, such as is alleged in the answer, should bar the plaintiff's action. I am amazed to find that in several courts of unquestioned dignity and authority the defense here made has been fully sustained. Clements v. Railway Co. [1894] App. Cas. 482; Johnson v. Railroad Co. (Pa. Sup.) 29 Atl. 854; Leas v. Pennsylvania Co. (Ind. App.) 37 N. E. 423. I can only say that I agree with none of them. The reason of the thing stands altogether on the other side. The demurrer to the third answer will be sustained.