IN THE

# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1898, AND MAY TERM,
1899, IN THE EIGHTY-THIRD YEAR OF THE STATE.

---

PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY *v.* MONTGOMERY.

[No. 17,821. Filed Feb. 19, 1898. Rehearing denied Dec. 23, 1898.]

RAILROADS.—*Personal Injury Caused by Negligence of Fellow Servant.
—Complaint.—Employers' Liability Act.*—Under sections 7083-7087
Burns 1894, known as the Employers' Liability Act, a complaint
against a railroad company is sufficient to withstand a demur-
rer for want of facts where it states that the engineer, while in
the service of defendant, in charge of a locomotive, negligently
injured the plaintiff, both being at the time acting in the line of
duty as employes of the defendant; and an averment that the en-
gineer at the time he committed the injury was acting in the place
and performing the duty of the corporation in that behalf is un-
necessary. *pp. 4-7.*

CONSTITUTIONAL LAW.—*Title to Act.—Employers' Liability Act.*—
Under section 19, article 4, of the state Constitution, providing that
every act shall embrace but one subject and matters properly con-
nected therewith, the act of March 4, 1893, entitled "An act regulat-
ing railroads and other corporations," and which enlarges the lia-
bility of railroads, is not unconstitutional. *p. 7.*

CORPORATIONS.—*Railroad Corporation a Person within the Meaning
of Bill of Rights.—Constitution Construed.*—Railroad corporations

Pittsburgh, etc., R. Co. v. Montgomery.

are persons within the meaning of section 21, article 1, of the Constitution of the State, and of the equality clause of the Constitution of the United States. *p. 8.*

CONSTITUTIONAL LAW.—*Railroads.*—*Employers' Liability Act.*—The Employers' Liability Act (Acts 1893, p. 294), making railroad and other corporations, except municipal corporations, liable for injuries to their employes resulting from negligence of co-employes, does not deny railroad corporations the equal protection of the laws guaranteed by section 23, article 1, of the Constitution of the State, and the fourteenth amendment to the Constitution of the United States. *pp. 9-13.*

SAME.—*Corporations.*—*Railroads.*—Where an act fixing the liability of corporations is valid as to railroad corporations, a railroad corporation cannot be permitted to litigate the constitutionality of the act as to other corporations. *pp. 13, 14.*

SAME.—*Employers' Liability Act.*—*Railroads.*—*Release From Future Liability.* — Section 7087 Burns 1894, which nullifies contracts made by railroad companies or other corporations, releasing them from future liability to employes for personal injuries is not unconstitutional, as being in violation of section 23, article 1, of the Constitution of the State and the fourteenth amendment to the Constitution of the United States. *p. 15.*

SAME.—*Employers' Liability Act.*—*Title.*—The prohibition of contracts releasing corporations from their liability for personal injuries to their employes, as prescribed by section 5, of the act of March 4, 1893, is germane to and properly connected with the main subject of the act, and need not be expressed in the title. *pp. 15, 16.*

RAILROADS.—*Contract by Employe to Release Company from Liability.*—*Election of Remedies.*—*Compromise and Settlement.*—Where, under a contract between a railroad company, by the terms of which an employe agrees that the acceptance of certain benefits shall operate as a release of all claims for damages against the company, the acceptance of such benefits does not constitute an election between remedies, or a compromise and settlement, but the agreement is a release within section 5, of the Employers' Liability Act (Acts 1893, p. 294), which invalidates such contracts. *pp. 16-23.*

JURY.—*Juror Excused on Court's Own Motion.*—*When Not Erroneous.*—It is not error for the court on its own motion to excuse a juror, where it is not shown that the jury which was finally impaneled was not a fair and impartial jury. *pp. 23, 24.*

SPECIAL VERDICT.—*Railroads.*—*Rules.*—*Evidence.*—A special finding of the jury, that under the "rules" of the defendant railroad company certain duties were assigned to the engineer in charge of a train, may be supported by the evidence, though no particular "rule" was introduced in evidence. *p. 24.*

Pittsburgh, etc., R. Co. v. Montgomery.

SPECIAL VERDICT.— *Failure to Find Material Fact.* — *Remedy.*—*New Trial.*—Where a special verdict fails to find material facts, within the issues which were established by the evidence, the remedy is not by a motion to coerce them into making such finding, but by a motion for a new trial by the party aggrieved. *pp. 24, 25.*

APPEAL AND ERROR.—*Erroneous Admission of Evidence.* —*Harmless Error.*—Where evidence was erroneously admitted over the objection of defendant, but was immediately withdrawn by plaintiff and the jury was instructed not to consider the evidence, the error was rendered harmless. *p. 25.*

DAMAGES.—*Personal Injuries.*—*Physical and Mental Suffering.*—In an action for damages for personal injuries, physical and mental suffering are proper elements of damages. *p. 25.*

From the Cass Circuit Court.   *Affirmed.*

*S. O. Pickens, N. O. Ross, G. E. Ross, D. H. Chase* and *G. W. Funk,* for appellant.

*S. T. McConnell, A. G. Jenkines, J. C. Nelson* and *Q. A. Myers,* for appellee.

McCABE, J.—This action was brought by the appellee against the appellant to recover damages suffered by him on account of the alleged negligence of the defendant resulting in a personal injury to the plaintiff. A demurrer to the complaint for want of sufficient facts, and a demurrer to the second paragraph of the answer, were overruled, and the issues joined were tried by a jury, resulting in a special verdict and judgment, over defendant's motion for a new trial, for $3,000 damages.

The errors assigned call in question the rulings on demurrer, the refusal of a new trial, overruling motions for a *venire de novo,* for judgment in appellant's favor on the special verdict, and sustaining appellee's motion for judgment on the special verdict in his favor.

The only objection urged to the complaint is that it shows that the plaintiff was a freight brakeman in the defendant's service on its railroad, and that it was the negligence of the engineer of the train on which he was serving that caused his injury, and that, under the fellow servant rule,

there was no liability. The injury occurred on July 1, 1893, after the act approved March 4, 1893, took effect, touching the liability of railroads, commonly called the "Employers' Liability Act." Acts 1893, p. 294, sections 7083-7087 Burns 1894, sections 5206s-5206v Horner 1897.

Appellant's learned counsel contend that it is settled law that the employer is not liable to an employe for injuries caused by the negligence of a co-employe in the same general service, unless the employer was guilty of some negligence in employing the servant with knowledge of his negligent habits or incompetency, or retained him after knowledge of such negligence or lack of skill. There is no showing of any such negligence on the part of the appellant, as employer, in the complaint. Appellee concedes this to be the common law rule, and that it prevailed in this State prior to the enactment above mentioned. Indeed, it is conceded by the appellee that his complaint depends upon that act for its sufficiency in its facts to constitute a cause of action, and is founded thereon.

It is first contended by the appellant that the act does not change the common law rule, and it would seem to follow, if that is true, that the complaint is clearly bad. The first section provides: "That every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases." Then follow four subdivisions specifying the cases in which liability is to attach, the fourth of which, and the one on which this action is founded, reads thus: "Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch yard, shop, round-house, locomotive engine, or train, upon a railway, or where such injury was caused by the negligence of any person, co-employe or fellow servant engaged in the same common service in any of the

several departments of the service of any such corporation, the said person, co-employe or fellow servant, at the time acting in the place, and performing the duty of the corporation in that behalf, and the person so injured, obeying or conforming to the order of some superior at the time of such injury, having authority to direct; but nothing herein shall be construed to abridge the liability of the corporation under existing laws." Appellant's learned counsel say: "The complaint lacks two allegations to make it good under this provision. (1) That the engineer at the time was acting in the place and performing the duty of the corporation in that behalf; and, (2) that appellee was obeying or conforming to the order of some superior at the time of such injury, having authority to direct. It was not alleged that the engineer was acting in the place or performing the duty of the master, or that appellee was acting in obedience to a superior," etc.

This language, together with other parts of appellant's brief, indicates that appellant's learned counsel construe the language of the statute above quoted as conveying the meaning that the right to recover against an employer for the negligence of a co-employe or fellow servant rests upon the condition that such negligent co-employe was at the time acting in the place and performing the duty that the master or employer owed to his or its servants or employes generally, and yet they do not say so in so many words. The majority of the court are of the opinion that the decision of that question is not necessary to the decision of this case. They hold that the only part of the fourth subdivision of said section which is necessary to be considered in determining the sufficiency of the complaint is the following: "Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any  *  *  *  locomotive engine or train upon a railway,  *  *  *  and the person so injured, obeying or conforming to the order of some su-

perior at the time of such injury, having authority to direct," and that hence it was not necessary that the complaint should state that the alleged negligent engineer, at the time he committed the alleged negligent injury, as provided in such concluding clause, was acting in the place and performing the duty of the corporation in that behalf, while the writer hereof is of the opinion that the whole of the fourth subdivision must stand together, and that the words quoted from the concluding clause qualify the liability created in the first clause or clauses. But the duty of the corporation therein mentioned, in the opinion of the writer, means, not the duty it owes to its servants, but the duty it owes to the public in carrying on its business; and the words "acting in the place of such corporation," with the other words quoted, were used to convey the idea that in order that the liability mentioned should exist, the negligent person, co-employe or fellow servant must be acting as such employe, in the line of his duty at the time of his negligence.

The writer is of opinion that the complaint is good under this construction; and the holding of the court is that, in order to make the complaint good under the first part of the subdivision quoted, as to the point in question, it is only required that it state that the engineer, while in the service of appellant, in charge of a locomotive engine, negligently injured the appellee, both being at the time acting in the line of duty as employes of the appellant. That being so, the averments of the complaint, showing, as they do, that at Hartford City, Indiana, the freight train upon which appellee was brakeman stopped to switch out loaded cars; that the conductor of said train, acting in the service of appellant, the authority and position of said conductor making it appellee's duty to obey his orders in respect to said train and switching, ordered appellee to go between said cars to make couplings, and while so engaged the engineer in charge of said train, also

in appellant's service, and in the line of his duty, without signal, carelessly, negligently, and recklessly reversed said engine and applied full steam, whereupon said cars were driven and jammed together with terrific force, without notice to appellee, whereby appellee's entire right hand was caught between the bumpers and mashed off, without any fault on his part,—make the complaint sufficient, under the statute, as to the objection thereto urged.

The next contention against the sufficiency of the complaint is that the act is unconstitutional, that being confessedly the foundation of the action. It is first contended that it violates section 19, article 4 of the state Constitution, which provides that "every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title." It is contended that the subject is not expressed in the title, in that the title is: "An act regulating liability of railroads and other corporations except municipal," while the provisions of the act itself are, as claimed by appellant, to create a liability which up to that time had no existence. The precise question here involved was decided adversely to appellant's contention on a statute similar to our own, under a constitution an exact copy of our own, in this respect, in *McAunich* v. *Mississippi, etc., R. Co.*, 20 Iowa, 338. We feel content to follow that case, without extending this opinion by repeating its reasoning, and, accordingly, hold that the subject is sufficiently expressed in the title.

The same rule has been, in effect, followed by this court in holding that the title of an act need not go into details. It is sufficient if it indicates with reasonable precision and clearness the subject it embraces. Nor is an act invalid because it includes details not mentioned in the title, provided the details are germane to the general subject designated in the title. *Bitters* v. *Board, etc.*, 81 Ind. 125; *Crawfordsville, etc., Co.* v. *Fletcher*, 104 Ind. 97; *Benson* v. *Christian*, 129 Ind. 535; *State, ex rel.*, v. *Kolsem*, 130

Ind. 434; *State, ex rel.,* v. *Roby,* 142 Ind. 168, 51 Am. St. 174, 33 L. R. A. 213; *Lewis* v. *State,* 148 Ind. 346.

In the course of some of the briefs filed in other cases involving the validity of the act, it is contended that the act is void, in that it violates section 22, article 4 of the state Constitution, providing that "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * regulating the practice in courts of justice." That the act does not violate the provision quoted is settled by *Woods* v. *McCay,* 144 Ind. 316, and cases cited; *Mode* v. *Beasley,* 143 Ind. 306, and cases there cited; *Board, etc.,* v. *State, ex rel.,* 147 Ind. 476. Also that it violates section 23 of the same article, requiring all laws to be of general and uniform operation throughout the State, where such a law can be made applicable. But that is a question for the legislature, whose determination is final and conclusive on the courts. *Mode* v. *Beasley, supra,* and cases there cited; *Wood* v. *McCay, supra,* and cases there cited.

It is next contended that the act violates section 23 of article 1 of the Constitution, providing that "the General Assembly shall not grant to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all citizens." Railroad corporations are persons within the meaning of this provision of our bill of rights, and the equality clause of the fourteenth amendment to the Constitution of the United States. *Charlotte, etc., R. Co.* v. *Gibbes,* 142 U. S. 386; *Santa Clara Co.* v. *Southern Pacific R. Co.,* 118 U. S. 394; *Pembina, etc., Mining Co.* v. *Pennsylvania,* 125 U. S. 187. The inequality complained of is that corporations, except municipal, are made liable for damages caused to one of their servants by the negligence of a co-employe or fellow servant, without any negligence on the part of the employer, while other employers are left free from such liability to their employes.

Appellant also contends that the act violates the equality clause of the fourteenth amendment of the Constitution of the United States, demanding for every person the equal protection, of the laws. The same provision, quoted from the bill of rights in the Constitution of this State, is found word for word in the bill of rights of the constitution of Iowa. The supreme court of that state, in upholding the employers' liability act of that state, held that the provision mentioned in the bill of rights in the constitution of that state was, in effect, the same as the equality clause of the fourteenth amendment to the federal Constitution, and that the employers' liability act did not violate either constitution in respect to equality of laws or equality of rights secured by each of said provisions, in *Bucklew* v. *Central Iowa, etc., R. Co.*, 64 Iowa, 611, 21 N. W. 103. That decision rests largely on two decisions made upon the subject of the constitutionality of the employers' liability act of Kansas and that of Iowa in the Supreme Court of the United States. Mackey had recovered a judgment for $12,000 damages against the Missouri Pacific Railway Company for injuries caused by a co-employe of that company, which on appeal was affirmed by the supreme court of Kansas. From that judgment the company appealed to the Supreme Court of the United States, on the ground that the Kansas statute violated the fourteenth amendment to the Constitution of the United States. But that court affirmed the judgment, holding that the act in no way infringed that amendment. *Missouri Pacific R. Co.* v. *Mackey*, 127 U. S. 205. Mr. Justice Field, speaking for the court, there said: * * * "The company calls the attention of the court to the rule of law exempting from liability an employer for injuries to employes caused by the negligence or incompetency of a fellow servant, which prevailed in Kansas and in several other states previous to the act of 1874, unless he had employed such negligent or incompetent servant without reasonable inquiry as to his qualifications,

or had retained him after knowledge of his negligence or incompetency. The rule of law is conceded where the person injured, and the one by whose negligence or incompetency the injury is caused, are fellow servants in the same common employment, and acting under the same immediate direction. * * * Assuming that this rule would apply to the case presented but for the law of Kansas of 1874, the contention of the company * * * is that the law imposes upon railroad companies a liability not previously existing, in the enforcement of which their property may be taken; and thus authorizes, in such cases, the taking of property without due process of law, in violation of the 14th amendment. * * * The supposed hardship and injustice consist in imputing liability to the company, where no personal wrong or negligence is chargeable to it or to its directors. But the same hardship and injustice, if there be any, exist when the company, without any wrong or negligence on its part, is charged for injuries to passengers. * * * The utmost care on its part will not relieve it from liability, if the passenger injured be himself free from contributory negligence. The law of 1874 extends this doctrine and fixes a like liability upon railroad companies, where injuries are subsequently suffered by employes, though it may be by the negligence or incompetency of a fellow servant in the same general employment and acting under the same immediate direction. That its passage was within the competency of the legislature we have no doubt. The objection that the law of 1874 deprives the railroad companies of the equal protection of the laws is even less tenable than the one considered. It seems to rest upon the theory that legislation which is special in its character is necessarily within the constitutional inhibition; but nothing can be further from the fact. The greater part of all legislation is special, either in the objects sought to be attained by it, or in the extent of its application. Laws for the improvement of

Pittsburgh, etc., R. Co. *v.* Montgomery.

municipalities, the opening and widening of particular streets, the introduction of water and gas, and other arrangements for the safety and convenience of their inhabitants, and laws for the irrigation and drainage of particular lands, for the construction of levees and the bridging of navigable rivers, are instances of this kind. * * * A law giving to mechanics a lien on buildings constructed or repaired by them, for the amount of their work, and a law requiring railroad corporations to erect and maintain fences along their roads, separating them from land of adjoining proprietors so as to keep cattle off their tracks, are instances of this kind. Such legislation is not obnoxious to the last clause of the fourteenth amendment, if all persons subject to it are treated alike under similar circumstances and conditions in respect both of the privileges conferred and liabilities imposed. * * * But the hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employes as well as the safety of the public." A like decision was made by the same court, upholding the employers' liability law of Iowa, which has been in force in that state ever since 1862. *Minneapolis, etc., R. Co.* v. *Herrick,* 127 U. S. 210. The Iowa statute is expressed in fewer words and better language than our own. It reads thus: "Every corporation operating a railway shall be liable for all damages sustained by any person, including employes of such corporation, in consequence of the neglect of agents, or by any mismanagement of the engineers or other employes of the corporation, and in consequence of the wilful wrongs, whether of commission or omission, of such agents, engineers, or other employes, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." Section 1307 Iowa R. S. 1873.

Herrick was injured in Iowa by the negligence of a fellow servant in the employ of said railroad company. He sued and recovered against the company on the Iowa statute in the state court of Minnesota, which judgment was affirmed in the supreme court of that state, upholding the constitutionality of the Iowa statute. *Herrick* v. *Minneapolis, etc., R. Co.,* 31 Minn. 11, 16 N. W. 413; *Herrick* v. *Minneapolis, etc., R. Co.,* 32 Minn. 435, 21 N. W. 471. On appeal to the Supreme Court of the United States the constitutionality of the Iowa statute was upheld on the authority of the *Missouri, etc., R. Co.* v. *Mackey,* 127 U. S. 205, as above stated.

Some ten or twelve states of the Union have such acts on their statute books and none of them have ever been held unconstitutional, while the following decisions of state supreme courts have held such legislation to be constitutional and valid. *McAunich* v. *Mississippi, etc., R. Co.,* 20 Iowa 338; *Bucklew* v. *Central Iowa, etc., R. Co.,* 64 Iowa, 611; *Rose* v. *Des Moines, etc., R. Co.,* 39 Iowa 246; *Kansas, etc., R. Co.* v. *Peavey,* 29 Kan. 169; *Missouri Pacific R. Co.* v. *Mackey,* 33 Kan. 298, 6 Pac. 291; *Attorney-General* v. *Railroad Companies,* 35 Wis. 425; *Ditberner* v. *Chicago, etc., R. Co.,* 47 Wis. 138, 2 N. W. 69. The questions decided by this court in *Townsend* v. *State,* 147 Ind. 624, 62 Am. St. 477, 37 L. R. A. 294, are analogous to and on the same lines as the cases just cited.

Appellant's learned counsel have urged upon our attention *Gulf, etc., R. Co.* v. *Ellis,* 165 U. S. 150, as probably declaring a different rule. The reference to that case is fortunate, because, while it does not in the least depart from the rule laid down in the two cases above cited, it lays down some principles governing the subject, doubtless in mind in both of the other judgments of the federal Supreme Court, but not deemed necessary in those cases to be fully stated. In the course of the opinion, Mr. Justice Brewer, speaking for the court, said: "That such corporations may be classified for

some purposes is unquestioned. The business in which they are engaged is of a peculiarly dangerous nature, and the legislature, in the exercise of its police powers, may justly require many things to be done by them in order to secure life and property. Fencing of railroad tracks, use of safety couplers, and a multitude of other things easily suggest themselves. And any classification for the imposition of such special duties—arising out of the peculiar business in which they are engaged—is a just classification, and not one within the prohibition of the fourteenth amendment. Thus it is frequently required that they fence their tracks, and as a penalty for a failure to fence double damages in case of loss are inflicted. *Missouri, etc., R. Co.* v. *Humes*, 115 U. S. 512. But this and all kindred cases proceed upon the theory of a special duty resting upon railroad corporations by reason of the business in which they are engaged—a duty not resting on others; a duty which can be enforced by the legislature in any proper manner; and whether it enforces it by penalties in the way of fines coming to the state, or by double damages to a party injured, is immaterial. It is all done in the exercise of the police power of the state, and with a view to enforce just and reasonable police regulations. * * * But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this. * * * It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection."

Objection is made to the validity of the act because it embraces all corporations except municipal, and that there are other corporations whose business may be such as not to afford any reasonable ground for their classification, in that

their business may not be peculiarly dangerous to life and limb, like that of railroads. To this it may be answered, if the act is valid as to railroad companies, the appellant, a railroad corporation, cannot be permitted to litigate the constitutionality of the act as to other corporations. *Henderson* v. *State, ex rel.*, 137 Ind. 552, 24 L. R. A. 469; *Board, etc.*, v. *Reeves*, 148 Ind. 467; *Currier* v. *Elliott*, 141 Ind. 394. It will be time enough to decide its validity as to other corporations when any of them come before this court with a case presenting the question.

It is also urged, as an objection to the validity of the act, that it exempts municipal corporations from its operation. But no reason has been suggested why municipal corporations should be classed as railroad corporations. We have many statutes applying to railroad corporations that do not apply to municipal corporations. There is no necessary similarity between them. Nor is the business of municipal corporations so peculiarly hazardous to their employes as to call for such special legislation as is called for in case of railroad corporations to protect their employes. We therefore conclude that the act does not violate the Constitution, either federal or state.

It is next contended that the circuit court erred in sustaining the plaintiff's demurrer to the second paragraph of the defendant's answer. It sets up that on the 8th day of March, 1893, and prior to the defendant's injury, he became a member of the voluntary relief department of the Pennsylvania lines west of Pittsburgh, and was such member at the time he was injured and so continued long after his said injury; that the management of said department is under the charge of said lines west of Pittsburgh; that said fund is made up of stated contributions from said lines, and the employes thereon, and said lines guarantee the fulfillment of all the obligations of said department, and make up and pay all deficiencies in the amounts necessary to pay all benefits to its members. In becoming a member of said relief department

he agreed to be bound by its rules and regulations, among which was that each member, on complying with its rules, was entitled to receive stipulated benefits on account of disability incurred by injury received to such member in the service of the company. This agreement is all set forth in the appellee's written application for membership, and signed by him; and among the stipulations contained therein, is the following, namely: "And I agree that the acceptance of benefits from the said relief fund for injury or death shall operate as a release of all claims for damages against said company arising from injury or death which could be made by or through me, and that I, or my legal representatives, will execute such further instrument as may be necessary formally to evidence such acquittance." And it is further averred that after receiving the injury complained of, while disabled thereby, he accepted benefits from said relief department to the amount of $385.

But it is contended by the appellee that by the fifth section of the act we have been considering the contract set up in this answer as a bar is made void. The contract set up is shown therein to have been entered into after the act took effect and became a law. The section reads thus: "All contracts made by railroads or other corporations with their employes, or rules or regulations adopted by any corporation releasing or relieving it from liability to any employe having a right of action under the provisions of this act are hereby declared null and void." Section 7087 Burns 1894. The balance of the section makes the whole act apply to future injuries and not to past. The validity of this section is assailed on the grounds that it violates the bill of rights and the fourteenth amendment of the federal Constitution. What we have said as to the validity of the other parts of the act, under these constitutional provisions, is applicable to this section, and hence it must be held not to infringe them.

And it is further insisted by appellant that said section violates section 19 of article 4 of the state Constitution, in

that the subject of the fifth section is not expressed in the title, nor properly connected with the subject expressed in the title. The prohibition of contracts releasing corporations from their liability, as prescribed in the act, is germane to and properly connected with that main subject of the act, and hence the matter of the fifth section thereof need not be expressed in the title. *State, ex rel.,* v. *Roby,* 142 Ind. 168, and cases there cited; *Warren* v. *Britton,* 84 Ind. 14; *Bitters* v. *Board, etc.,* 81 Ind. 125; *Benson, Adm.,* v. *Christian,* 129 Ind. 535; *Farrell* v. *State,* 45 Ind. 371; *Thomasson* v. *State,* 15 Ind. 449; *Beams* v. *State,* 23 Ind. 111; *Bank of the State* v. *City of New Albany,* 11 Ind. 139; *State, ex rel.,* v. *Sullivan,* 74 Ind. 121; *City of Indianapolis* v. *Huegele,* 115 Ind. 581; *Hunter* v. *Burnsville, etc., Co.,* 56 Ind. 213; *Walker* v. *Dunham,* 17 Ind. 483; *McCaslin* v. *State, ex rel.,* 44 Ind. 151; *State, ex rel.,* v. *Kolsem,* 130 Ind. 334; *Shoemaker* v. *Smith,* 37 Ind. 122; *Crawfordsville, etc., Co.* v. *Fletcher,* 104 Ind. 97; *Barnett* v. *Harshbarger,* 105 Ind. 410; *Hunt* v. *Lake Shore, etc., R. Co.,* 112 Ind. 69. We therefore hold that the fifth section is not invalid, because it is a matter properly connected with the subject of the act.

Assuming that it is valid, and makes a contract releasing or relieving corporations from liability under the act absolutely void, appellant's learned counsel contend that there is nothing in the agreement set forth in the second paragraph of the answer relieving or releasing the company from liability for negligence, or from any liability whatever. They say appellee "elected to accept benefits from the relief fund, and having done so he cannot maintain this action for damages. That is the essence of his agreement." Appellant's counsel further say in one of their briefs, that "the payment and acceptance of benefits under the terms of the contract in this relief fund is simply a compromise and settlement of the claim of the injured employe against the company." Let us suppose that the above statement is true; it is certainly the strongest and best statement that can be made of appellant's position.

What is it that makes the acceptance of benefits from the relief fund a compromise and settlement of appellee's claim? Only one answer can be made to this question, and that is that the antecedent contract alone makes it such. There is no allegation in the answer that in accepting the benefits appellee made any agreement or compromise whatever, and there is no claim that he did. He simply accepted that which he had a legal and moral right to demand. His own contributions helped to create the fund, and his injury brought him within the rules and regulations entitling him to the benefits. So, even if it was a compromise and settlement, it was such wholly and solely by virtue of the antecedent contract—a contract executed before the injury occurred; and, that being so, it amounts to nothing more than an attempt to secure a release of future liability under the act, call it by whatsoever name we may. But such acceptance is not, in any proper or legal sense, a compromise and settlement of liability under the act. The language of the contract is: "And I agree that the acceptance of benefits from said relief fund shall operate as a release of all claims for damages against said company, arising from such injury or death," etc. So, by the express terms of the contract, it is a release, and not a compromise and settlement. The acceptance of benefits shall operate as a release But what makes it so? If the antecedent contract was abrogated, the acceptance of benefits would have no effect whatever upon the question of appellant's liability under the act; because he had a legal and moral right, as before remarked, to demand and receive such benefits. So, if the release takes place, it is not by virtue of the acceptance, but it is by the force, vigor, and effect of the antecedent contract. It breathes that effect into the acceptance.

But it is contended that the contract does not, of itself, operate as a release of liability under the act. The only difference between it and a contract of absolute release is that the

one would be unconditional while the other is conditional. The conclusion seems unavoidable that the contract here is a conditional release of appellant from liability under the act. The condition upon which it is to become absolute is the acceptance of benefits from the relief fund. Section 5 of the act makes "all contracts  *  *  *. by any corporation releasing or relieving it from liability" under the act "null and void."

Appellant's learned counsel contend that an exact copy of this contract was held valid in the following cases: *Johnson* v. *Philadelphia, etc., R. Co.*, 163 Pa. St. 127, 29 Atl. 854; *Ringle* v. *Pennsylvania R. Co.*, 164 Pa. St. 529, 44 Am. St. 628, 30 Atl. 492; *Lease* v. *Pennsylvania Co.*, 10 Ind. App. 47; *Donald* v. *Chicago, etc., R. Co.*, 93 Iowa 184, 33 L. R. A. 492, 61 N. W. 971. The first three cases just cited were decided in states not having employers' liability acts forbidding contracts of this kind in force at the time the injury sued for occurred. And they proceeded upon the sole ground that the contract did not violate public policy, and therefore they were upheld. But the Iowa case was decided in a state having in force at the time such an act. But in that case the injury resulted in death and the administrator of the deceased had recovered a judgment against the company for the benefit of the mother of the deceased on account of his death, on a similar statute to our own. The deceased was a member of the relief association very similar to the one here involved. The case decided in *Donald* v. *Chicago, etc., R. Co., supra,* was a suit by the mother against the relief association for the $500 death benefits provided by the rules of the association. The case was decided against her because of the following stipulation in the contract signed by the deceased when he became a member of the relief association, namely: "Should a member or his legal representative bring suit against the company  *  *  *  for damages on account of injury or death of such member, payment of benefits from the relief fund on account of the same shall not be

made until such suit is discontinued; and if suit shall proceed to judgment or shall be compromised, all claims upon the relief fund for benefits on account of such injury or death shall be thereby precluded." That contract does not seek to avoid the liability of the company under the Iowa act, and hence was a perfectly legal contract. As before observed, the other cases involved the question whether such a contract as that now before us was invalid because of its violation of public policy. Without either approving or disapproving of the rule laid down by the Pennsylvania supreme court and our own Appellate Court, yet the United States Circuit Court for the district of Colorado decided the question the other way in a strong and able opinion in *Miller* v. *Chicago R. Co.*, 65 Fed. 305; and we think there is a marked distinction in the rule where a contract is charged with violating public policy and where it contravenes a positive statutory prohibition, and especially where the statute provides that the inhibited contract shall be null and void. In *Barrett* v. *Carden*, 65 Vt. 431, 36 Am. St. 876, the supreme court of Vermont said: "The defendant insists that the alleged undertaking of the plaintiff is contrary to public policy, and that for this reason the bond should be declared void. Courts will not declare contracts void on grounds of public policy except in cases free from doubt, and prejudice to the public interest must clearly appear before a court is justified in pronouncing an instrument void on this account. In *Richmond* v. *Dubuque, etc., R. Co.*, 26 Iowa, 191, it is said: 'that the power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.' * * * In *Richardson* v. *Mellish*, 2 Bing. 229 (9 Eng. Com. L. 558), Sir James Burrough said: 'I protest as my lord has done against urging too strongly upon public policy; it is a very unruly horse, and when once you get astride it you never know where it will carry you. It may

lead you from the sound law. It is never urged at all but when other points fail.' In *Walsh* v. *Fussell*, 6 Bing. 169 (19 Eng. Com. L. 83), Lord Chief Justice Tindale, in pronouncing judgment, said: 'It is not contended that the covenant was illegal on the ground of the breach of any direct rule of law or the direct violation of any statute, and we think to hold it to be void on the ground of its impolicy or inconvenience, we ought to be clearly satisfied that the performance of it would be necessarily attended with injury or inconvenience to the public.' "

As was said in *Brooks* v. *Cooper*, 50 N. J. Eq. 761, 35 Am. St. 793, 21 L. R. A. 617: "Where there is no statutory prohibition, the law will not readily pronounce an agreement invalid on the ground of policy or convenience, but is, on the contrary, inclined to leave men free to regulate their affairs as they think proper. * * * Now, the intention of the contract was to contravene the statute, and this intention is revealed in the contract. This renders the contract vicious and unenforceable."

An eminent author says: "By public policy is intended that principle of law which holds that no citizens can lawfully do that which has a tendency to injure the public, or which is against the public good. Courts will not declare contracts void on grounds of public policy except where the case is free from doubt, and where an injury to the public interest clearly appears. A doubtful matter of public policy is not sufficient to invalidate a contract." 2 Beach Modern Law of Contracts, section 1498, and authorities there cited.

It might be difficult to say that such a contract has a tendency to injure, or is against the public good, beyond all doubt. On the other hand, the same author says, section 1447, that: "Contracts requiring the performance of acts forbidden by statute, or tending to promote such acts, are void, even though the statute does not declare them void." See the authorities there cited. The same author, in section 1443, says: "Whatever tends to interfere with the bene-

ficial operation of the statute is unlawful, as against the pol-
icy of the law. Whatever tends to obstruct duty by defeat-
ing the letter or spirit of the law is also unlawful; and the
courts will not enforce any agreement or contract for the
benefit of one through whose direction or assistance the law
is violated.  *  *  *  The law attempts to close the doors
to temptations by refusing such parties recognition in the
courts." See authorities there cited.

It is laid down in 3 Am. & Eng. Ency. of Law, 872, that:
"Where a transaction is forbidden by a statute, it is void; the
grounds of the proposition are immaterial." As we have before
said, the contract in question is a release of appellant's liabil-
ity under the act upon a certain condition. That it is a condi-
tional release of such liability, dependent upon the happening
of the condition, namely, the acceptance of said benefits by
appellee, there can be no doubt. If that condition happens,
as it did, appellant's liability under the act is released by vir-
tue of the antecedent contract, if it is enforced. If it is en-
forced it must be so done in violation of the statute which
makes all such contracts null and void. That certainly more
than tends to obstruct both the letter and spirit of the statute.
Our cases are to like effect in holding that a contract in viola-
tion of a statute is void. *State Bank* v. *Coquillard*, 6 Ind.
232; *Cassaday* v. *American Ins. Co.*, 72 Ind. 95. And the
same is true if any part of the contract is in violation of
the law and the consideration unseverable. *Daniels* v. *Bar-
ney*, 22 Ind. 207; *Case* v. *Johnson*, 91 Ind. 477; *Benton* v.
*Hamilton*, 110 Ind. 294; *Woodford* v. *Hamilton*, 139 Ind.
481; *Sandage* v. *Studebaker, etc., Co.*, 142 Ind. 148; *Sulli-
van* v. *State, ex rel.*, 121 Ind. 342.

But the contract is only conditionally in conflict with the
statute; that is, if the condition never happens, it does not
and never can conflict with the statute. But it is equally
true if the condition does happen it will directly conflict
with the statute. One of the most learned of law writers
upon this topic says: "A condition is a limitation making a

contract arbitrarily dependent on an event at the time uncertain." 1 Wharton Law of Contracts, section 545. And in section 548 the same learned author says: "The promisor is not to be bound only in the future; he is bound from the time he makes the promise; and the title he passes vests subject to the condition. Any intermediate disposition of the title made by the promisor before the happening of the condition is subject to the condition. * * * The promisor, also, who agrees to convey an estate on a future contingency, is liable in damages if he makes his compliance with his promise impossible, or subjects the property to waste." And in section 551 he further says: "The same may be said of all contracts to be performed on the happening of a certain event. The contract binds from the time it is made, and ceases to bind on the non-occurrence of a certain event, which is, therefore, in this sense, a condition subsequent." To the same effect is Clark Contracts, Hornbook Series, section 277, p. 663.

If we were even mistaken in construing this contract as a conditional one, so as to bring it within the principles above laid down and within the condemnation of the statute in question, it unquestionably falls within the principle laid down by Wharton, thus: "The prohibition of a statute cannot be evaded by putting a contract in a shape which, while nominally not inconsistent with the statute, virtually contravenes its provisions. This has been frequently held with regard to stipulations evading usury statutes, and with regard to assignments evading bankrupt laws. If a contract conflicts with the general policy and spirit of a statute governing it, it will not be enforced, although there may be no literal conflict." 1 Wharton Law of Contracts, section 362. In State, ex rel., v. Forsythe, 147 Ind. 466, 33 L. R. A. 22, it was said: "In chapter IV, section 1, of Maxwell on the Interpretation of Statutes, under the title of 'Construction to Prevent Evasion,' it is accordingly said, at pages 133 and 134: 'It is the duty of the judge to make

such construction as shall suppress all evasions for the continuance of the mischief. To carry out effectually the object of a statute, it must be so construed as to defeat all attempts to do or avoid in an indirect or circuitous manner that which it has prohibited or enjoined. *In fraudem legis facit, qui, salvis' verbis legis, sententiam ejus circumvenit;* and a statute is understood as extending to all such circumventions, and rendering them unavailing. *Quando aliquid prohibetur, prohibetur et omne per quod devenitur ad illud.* When the acts of the parties are adopted for the purpose of effecting a thing which is prohibited, and the thing prohibited is in consequence effected, the parties have done that which they have purposely caused, though they may have done it indirectly. ·When the thing done is substantially that which was prohibited, it falls within the act, simply because, according to the true construction of the statute, it is the thing thereby prohibited. Whenever courts see such attempts at concealment they brush away the cobweb varnish, and show the transaction in its true light. They see things as ordinary men do, and see through them. Whatever. might be the form or color of the transaction, the law looks to the substance of it. In all such cases it is, in truth, rather the particular transaction than the statute which is the subject of construction; and if it is found to be in substance within the statute, it is not suffered to escape from the operation. of the law by means of the. disguise under which its real character is masked."

We are therefore of opinion that the contract set up in the second paragraph of the answer is in contravention of the statute, and hence, by force thereof, the contract so set up is null and void; and that being so, said answer was bad, and the circuit court did not err in sustaining the demurrer thereto for want of sufficient facts.

It is complained under the motion for a new trial that the circuit court erred in excusing on its own motion the juror Overholser, who it is alleged was a competent juror, over ap-

pellant's objection. But it is not shown that the jury which was finally impaneled was not a fair and impartial jury. In such a case the matter is very much in the discretion of the trial court, and no error is committed where no injury results from the court's action in excusing the juror. *DePew v. Robinson*, 95 Ind. 109. It is not even claimed that any injury resulted therefrom. We therefore conclude there was no error committed in excusing the juror.

It is further contended that the seventh item in the special verdict is not supported by the evidence. It reads thus: "We further find that, under the rules of the defendant company governing the operation of defendant's freight trains in cases where it became necessary for brakemen to go between defendant's cars, attached to the engine drawing the same, for the purpose of making couplings, it was the duty of the engineer in charge of the engine of said train, after receiving a signal from a brakeman, to stop the engine and train for the purpose of allowing such brakeman to pass between the cars thereof and make a coupling, to obey a signal and stop the engine and train, and so remain until receiving a signal from some member of the train crew to back or pull forward." Counsel say: "The evidence does not sustain this finding. There was no evidence of such a rule." The finding is not that there was such a rule, but that, "under the rules of the defendant," not rule, "it was the duty of the engineer" to do certain things. Those rules might have been such as were adopted by the company, or such as by long usage and custom had become understood as incumbent on appellant's servants. We think there was evidence sufficient to support this finding.

The tenth finding was objected to because the evidence on that branch of the verdict was not sufficient to sustain it, but there was evidence sufficient to support it, though there was strong conflicting evidence. We can only look to that part of the evidence that supports the finding.

It is also complained that the circuit court erred in refus-

ing to require the jury to return to their room and insert in their special verdict certain facts specified. To have sustained the motion would have been an invasion by the court of the province of the jury to determine the facts. If a special verdict fails to find material facts, within the issue, which were established by the evidence, the remedy is not by a motion to coerce them into making such finding, but by a motion for a new trial by the party aggrieved. *Brazil, etc., Co.* v. *Hoodlet*, 129 Ind. 327, and cases there cited; *Vinton* v. *Baldwin*, 95 Ind. 433, and cases there cited; *City of Lafayette* v. *Allen*, 81 Ind. 166, and cases cited.

Overruling appellant's objection to the question and answer of the witness Ballard is also urged as error. The appellee's counsel had asked the witness the question what danger there was to appellee's life at the time witness saw him, and he answered, "I considered him in a great deal of danger; a man continuing in that condition could not live many days." Appellee's counsel immediately withdrew the evidence, and the court, at the request of appellant's counsel, instructed the jury not to consider such evidence. There was no available error in the ruling.

Complaint is made of the third instruction given by the court: "That in estimating the plaintiff's damages it is proper * * * that you should take into consideration the plaintiff's physical and mental suffering." In *Wabash, etc., R. Co.* v. *Morgan*, 132 Ind., at p. 438, an instruction "that in making such estimate the jury should take into consideration appellee's physical and mental suffering if any were caused by and arising out of the injury" was upheld as not an "erroneous statement of the rule governing the assessment of damages contained in either of the instructions." There was no error in giving the instruction.

The fourth instruction is complained of, reading, as appellant's counsel say in their brief, thus: "The jury are instructed that if they find that the plaintiff has proved by a preponderance of the evidence the injuries he has sustained

as charged in the complaint, then every particular and phase of the injury may enter into the consideration of the jury in estimating his damages, loss of time with reference to his condition and ability to earn money in his business or calling, his loss from permanent improvement of his physical powers, his pain and suffering already endured and that may be endured from his injuries in the future, his personal disfigurement; and the jury should give the plaintiff such a sum as will compensate him for the injuries received, taking into consideration all the facts proved in the case." The appellee's counsel have copied the same instruction into their brief, except the word printed "improvement" in appellant's copy of the instruction, is printed "impairment" in appellee's copy. Neither brief cites us to the place in the transcript where the instruction can be found, and we have spent some time hunting for it, without success. Under such circumstances we are justified in assuming that the word "improvement" in appellant's copy is a clerical or typographical error, and that the real instruction had the word "impairment" in it instead of the word "improvement" as set out in appellant's brief. Indeed, if the word "improvement" were in the transcript, instead of the word "impairment," it is so manifestly a clerical mistake in copying the instruction that we are authorized to read it "impairment" instead of "improvement." *Landon* v. *White*, 101 Ind. 249; *Indiana, etc., R. Co.* v. *Dailey*, 110 Ind. 75. With that reading the instruction is correct. *Wabash, etc., R. Co.* v. *Morgan*, 132 Ind. 438. We have thus patiently gone over all the rulings of the circuit court urged and properly presented here as error, and conclude that the circuit court did not err in overruling the motion for a new trial. The judgment is affirmed.