THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY
v. C. F. MEDARIS.

### No. 10995.

RAILROADS—*Fellow-servant Act Construed.* A stone-mason employed by a railroad company in setting curbing around a depot and office building, and who was injured by the falling of a curbstone which was left standing in an insecure position by a coemployee, is not within the protection of the fellow-servant act (Laws of 1874, ch. 93, § 1, Gen. Stat. 1897, ch. 70, § 15, Gen. Stat. 1889, ¶ 1251), which makes railroad companies liable to their employees for damages resulting from the negligence of other employees

Error from Labette district court; A. H. SKIDMORE, judge. Opinion filed January 7, 1899. Reversed.

*T. N. Sedgwick,* for plaintiff in error.

*W. D. Atkinson,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : C. F. Medaris recovered a judgment against the Missouri, Kansas & Texas Railway Company for personal injuries sustained by him while employed in setting a curbing around the office building and depot of the railway company in Parsons. The curbstones had been prepared elsewhere and shipped to Parsons and unloaded near the building around which they were to be placed. The men employed to set the curbing dug a ditch, and several of the curbstones were brought up and left on the side of the ditch, ready to be placed. A stone which had been left standing unsupported on the edge of the ditch was upset and fell upon the leg of Medaris while setting another one, causing a permanent injury. He alleged that the injury resulted from the negligence of his coemployees in leaving the stone in

an insecure position, and the jury found that the allegation was sustained by the testimony, and awarded damages in the sum of $3000.

The question we are called upon to determine is whether Medaris is within the protection of the statute which makes railway companies liable for damages to coemployees for injuries caused by the negligence of fellow servants. (Laws of 1874, ch. 93, § 1; Gen. Stat. 1897, ch. 70, § 15.) From the facts, it appears that there was no common-law liability for the injury sustained, but if any exists it arises under the above fellow-servant act. Whether Medaris is entitled to the benefit of this law depends upon the character of the work in which he was engaged, and not on the mere fact that he was an employee of a railroad company. The validity of the law has been sustained as against the charge that it was class legislation, on the ground that the hazardous character of the business of operating a railroad justified the passage of a law for the protection of those engaged in that service. The rule of liability applied under the statute is different from that which ordinarily applies between master and servant, but this difference is founded on the hazardous character of the service, and is not intended as a discrimination between employers. The statute would certainly be open to objection if a different rule of liability were applied to a railroad company than is applied to other employers under like circumstances and conditions. The hazards incident to the use and operation of railroads is a natural and reasonable classification which justifies the exceptional legislation. If the statute were not given that interpretation and limited in its operation to the protection of those engaged in the hazardous service, it could not be upheld.

In *Union Trust Co. v. Thomason*, 25 Kan. 1, the stat-

ute was held to apply only to those engaged in the hazardous business of operating railroads. In *Mo. Pac. Rly. Co. v. Haley*, 25 Kan. 53, the act was again construed, and it was remarked that it "embraces only those persons more or less exposed to the hazards of the business of railroading." We have had a number of railroad cases in which the interpretation referred to has been pushed to the uttermost limit, but they have all been cases where the injury occurred in connection with the use and operation of the railroad. In *U. P. Rly. Co. v. Harris*, 33 Kan. 416, 6 Pac. 571, it was held to apply to a section man employed in repairing a track, and where he was injured while assisting in removing a rail from a car on the track. In *A. T. & S. F. Rld. Co. v. Koehler*, 37 Kan. 463, 15 Pac. 567, the injury was received by a person while loading rails on a car to be taken to other portions of the company's road. It was held that the services were of such character as brought him within the protection of the act. *A. T. & S. F. Rld. Co. v. Brassfield*, 51 Kan. 167, 32 Pac. 814, is a similar case, where a section man was injured while unloading material from a car for the purpose of repairing the railroad. The hazardous character of the service entitled him to the benefit of the act. In *C. K. & W. Rld. Co. v. Pontius*, 52 Kan. 264, 34 Pac. 739, the act was held to apply to a bridge carpenter who was injured while loading timbers on a car for transportation over the company's road. Emphasis was placed on the statement that the accident did not happen while he was engaged in building a bridge, but that it occurred in connection with the operation of a railroad — that is, in loading a car which was on the track for transportation over the railroad. In *A. T. & S. F. Rld. Co. v. Vincent*, 56 Kan. 344, 43 Pac. 251, an em-

ployee of a railroad was injured by the negligence of his coemployee while engaged in repairing the railroad, and the claimed liability against the company was sustained.

In each of these cases it will be observed that the injured person held to be entitled to the benefit of the act was engaged in services connected with the use and operation of a railroad. Here, however, the service which Medaris was performing did not expose him to the hazards peculiar to the business of using and operating a railroad. He was not at work on a railroad, and his injury was not caused by the operation of a railroad or the use of any railroad appliance. It is true that there were railroad tracks near the place where he was at work, but no train was passing or near the place where Medaris was at work at the time the injury was inflicted. It is true, also, that he was at work for a railroad company, and upon the land of a railroad company, but this does not entitle him to the benefits of the act. He can only recover by showing that the service in which he was engaged exposed him to the peculiar perils incident to the operation of a railroad. As the jury specially found, the work in which he was engaged involved no more risk or hazard than it would if the same work were being done for an individual at the same time and place. The benefits of the act can no more be claimed by him than by the carpenter who laid the floor in the office building or nailed the shingles on its roof. No stronger claim could be made for him than could for a person injured while hauling the rock from the quarry to the place where the curbing was to be set.

As was held by the supreme court of Minnesota, one rule of liability cannot be established for a railroad company as such, and another for other employers

Railway Co. v. Medaris.

under like circumstances and conditions. To avoid the imputation of class legislation, the distinction must be based upon a difference in the nature of the employment, "but no just reason can be suggested why such difference should be founded not on the character of the employment nor on the dangers to which those employed are exposed, but on the character only of the employer. We can see why the employer's liability should be greater when the business is that of operating a railroad, but cannot see why one individual or corporation should be held to a rule of liability different from that applied to another when the employment and its hazards are precisely the same." (*Lavallee v. St. P. M. & M. Rly. Co.*, 40 Minn. 249, 41 N. W. 974. See, also, *Johnson v. St. Paul & Duluth R. Co.*, 43 Minn. 222, 45 N. W. 156 ; *Deppe v. C. R. I. & P. Rly. Co.*, 36 Iowa, 52 ; *Stroble v. C. M. & St. P. Rly. Co.*, 70 Iowa, 555, 31 N. W. 63.)

It is difficult to see how the validity of the law can be sustained unless it is interpreted, as was stated in *Mo. Pac. Rly. Co. v. Haley*, supra, to "embrace only those persons more or less exposed to the hazards of the business of railroading." We feel compelled to hold that the plaintiff below was not engaged in that kind of service when the injury was ·inflicted, and therefore that no liability against the company under the statute arises in his favor. The judgment is reversed.

DOSTER, C. J. (concurring) : I concur in the decision of this case, but only upon the assumption ·that the "fellow-servant act" of 1874 is not an amendment of the general railroad-incorporation law. If it were such, I should have no doubt of the power of the legislature to impose upon railroad corporations the obligation to respond in damages for injuries

negligently inflicted by one of their employees upon another, whether engaged in the non-hazardous branches of the railroad service or otherwise. This would result from section 1, article 12, of the constitution, which ordains that "corporations may be created under general laws; but all such laws may be amended or repealed." The act in question has been, however, regarded as applying not only to railroad corporations proper, but to other kinds of corporations and to individuals engaged in the business of operating railroads. (*Union Trust Co. v. Thomason*, 25 Kan. 1; *Rouse v. Harry*, 55 Kan. 589, 40 Pac. 1007.) If it can be thus extended to cover such classes of cases, it cannot be regarded as a mere amendment of the railroad-incorporation act, but must be considered as a remedial statute, applying rather to the business of railroad operation than as attaching qualifications and conditions to the exercise of railroad franchises. The questions herein suggested were not discussed before us, and as to what should be the proper view to be taken of them I have no matured judgment. However, I yield formal assent to the decision made, but without feeling myself bound by it as in other and ordinary cases.