# BEDFORD QUARRIES COMPANY v. BOUGH.

[No. 20,489. Filed March 1, 1907. Rehearing denied June 25, 1907.]

1. APPEAL.—*Joint Exceptions.*—An entry on the overruling of defendant's several demurrer to each paragraph of the complaint, showing that the defendant at the time "severally" excepted to such ruling, shows a several exception to the ruling as to each paragraph of the complaint. p. 673.

2. CONSTITUTIONAL LAW. — *Class Legislation.* — The legislature may make classifications for legislative purposes, but they must rest upon some natural or substantial basis and must operate alike upon all within the class. p. 674.

3. SAME. — *Employers' Liability Act.*—*Private Corporations.* — Section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901) providing that "every railroad or other corporation * * * shall be liable for damages for personal injury suffered by any employe while in its service, * * * where such injury resulted from the negligence" of any person to whose order the injured servant is required "to conform," is unconstitutional as to private corporations, since it imposes burdens on them not placed upon individuals or partnerships engaged in similar business. p. 675.

4. MASTER AND SERVANT.—*Fellow-Servant Doctrine.*—The fellow-servant doctrine, as applicable to our great industrial development, has become arbitrary. p. 685.

5. CONSTITUTIONAL LAW. — *Employers' Liability Act.* — *Private Corporations.*—*Right to Question Statute.*—Private corporations, having certain liabilities imposed upon them by section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901) have the right to contest the validity of such statute, since if it is invalid their servants cannot found a right of action thereon. p. 687.

6. CORPORATIONS. — *Organization.* — *Statutes.* — *Amendments.* — Section one of the employers' liability act (Acts 1893, p. 294, §7083 Burns 1901), purporting to create liabilities against railroads and other corporations for injuries to servants under certain circumstances, cannot be considered as an amendment to the laws under which railroad and other companies are organized. p. 687.

7. WORDS AND PHRASES. — *"Other Corporations."* — The words "other corporations," as used in §7083 Burns 1901, Acts 1893, p. 294, §1, include foreign as well as domestic corporations. p. 688.

8. CORPORATIONS.—*Foreign.*—*Power to Alter, Amend or Repeal.* —States have no power to alter, amend or repeal the charters of foreign corporations, or the laws under which they were organized. p. 688.

9. SAME.—*Foreign.*—*Rights of State.*—The State has the power to prohibit or regulate the doing of business, by foreign corporations, within this State. p. 688.

10. MASTER AND SERVANT.—*Safe Place.*—The master is required to use ordinary care to provide the servant a safe place in which to work. p. 689.

11. SAME.—*Fellow Servants.*—*Negligence.*—The master is not liable to his servant for a fellow servant's negligence in the details of the work, nor for necessary transitory perils created by the character of the work, nor for a fellow servant's negligence in handling the appliances furnished. p. 689.

From Orange Circuit Court; *William C. Utz,* Special Judge.

Action by Martin S. Bough against the Bedford Quarries Company. From a judgment on a verdict for plaintiff for $2,000, defendant appeals. *Reversed.*

*F. M. Trissal, Brooks & Brooks* and *W. T. Abbott,* for appellant.

*East & East,* for appellee.

MONKS, J.—This action was brought by appellee to recover for injuries received by him while working for appellant in its stone mill. The complaint was in three paragraphs. Appellant's demurrer for want of facts to

each paragraph of the complaint was overruled, and a trial of the cause resulted in a verdict, and, over a motion for a new trial, a judgment in favor of appellee.

The assignment of errors calls in question the action of the court in overruling the demurrer to each paragraph of the complaint and the motion for a new trial.

The first and second paragraphs of complaint are based upon the alleged negligence of appellant in not providing a safe place for appellee to work, and the third paragraph, upon the second subdivision of §7083 Burns 1901, being section one of the employers' liability act (Acts 1893, p. 294).

Appellee insists that no question is presented as to the court's ruling on the demurrer to each paragraph of the complaint because the exception to the same was

1. "in gross," citing *Noonan* v. *Bell* (1902), 159 Ind. 329, and *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 63 L. R. A. 460. The record shows that appellant filed a separate demurrer to each paragraph of the complaint, and recites the ruling thereon as follows: "Come also the parties, and the demurrer to the complaint and to each paragraph thereof heretofore filed is by the court overruled, to which ruling of the court the defendant at the time severally excepts." This shows a several exception to the ruling on the demurrer as to each paragraph of the complaint. *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85, 88. *Whitesell* v. *Strickler* (1907), 167 Ind. 602, expressly disapproved the cases cited by appellee on this point.

The portion of §7083, *supra,* upon which the third paragraph of the complaint is based reads as follows: "That every railroad or other corporation, except municipal, operating in this State, shall be liable for damages for personal injury suffered by any employe while in its service, the employe so injured being in the exercise of due care and diligence, in the following cases: * * * Second.

Where such injury resulted from the negligence of any person in the service of such corporation, to whose order or direction the injured employe at the time of the injury was bound to conform, and did conform." It is urged by appellant that said employers' liability act, except as applied to railroads, is in violation of the fourteenth amendment of the Constitution of the United States, and therefore void, for the reason that it imposes burdens upon private corporation employers that are not imposed on individual and copartnership employers in the same business and under the same circumstances and conditions, and gives a right of action to the employes of private corporations that is not granted to the employes of individuals and copartnerships under like conditions.

Appellee insists that the legislature has the power of classification for legislative purposes, and that the classification in said act was proper. The legislature may 2. make a classification for legislative purposes, but it must have some reasonable basis upon which to stand. It is evident that differences which would serve for a classification for some purposes would furnish no reason for a classification for legislative purposes. Such legislation must not only operate equally upon all within the class, but the classification must furnish a reason for and justify the making of the class; that is, the reason for the classification must inhere in the subject-matter, and rest upon some reason which is natural and substantial, and not artificial. Not only must the classification treat all brought under its influence alike, under the same conditions, but it must embrace all within the class to which it is naturally related. Neither mere isolation nor arbitrary selection is proper classification. *Dixon* v. *Poe* (1902), 159 Ind. 492, 60 L. R. A. 308, 95 Am. St. 309, and authorities cited; *School City of Rushville* v. *Hays* (1904), 162 Ind. 193, 200-204; *Street* v. *Varney Electrical Supply Co.* (1903), 160 Ind. 338, 61 L. R. A. 154, 98 Am. St. 325; *Town of Longview*

v. *City of Crawfordsville* (1905), 164 Ind. 117, 121-124, 68 L. R. A. 622, and cases cited; *McKinster* v. *Sager* (1904), 163 Ind. 671, 681-687, 68 L. R. A. 273, 106 Am. St. 268, and cases cited; *Sellers* v. *Hays* (1904), 163 Ind. 422, 433-437, and cases cited; *Ballard* v. *Mississippi, etc., Oil Co.* (1902), 81 Miss. 507, 34 South. 533, 95 Am. St. 476, 62 L. R. A. 407; *Slocum* v. *Bear Valley Irrigation Co.* (1898), 122 Cal. 555, 55 Pac. 403, 68 Am. St. 68; *Johnson* v. *Goodyear Mining Co.* (1899), 127 Cal. 4, 59 Pac. 304, 78 Am. St. 17, 47 L. R. A. 338; *Lavallee* v. *St. Paul, etc., R. Co.* (1889), 40 Minn. 249, 41 N. W. 974; *Johnson* v. *St. Paul, etc., R. Co.* (1890), 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419; *Cotting* v. *Kansas City Stock Yards Co.* (1901), 183 U. S. 79, 107-112, 22 Sup. Ct. 30, 46 L. Ed. 92; *Connelly* v. *Union Sewer Pipe Co.* (1902), 184 U. S. 540, 560-564, 22 Sup. Ct. 431, 46 L. Ed. 679; Cooley, Const. Lim. (7th ed.), pp. 560-562.

While the employers' liability act, so far as it affects private corporations, applies to all within the class named therein, it does not include all of the class to which 3. it is naturally related. Employes of individuals and copartnerships are excluded from the benefit of its provisions. It gives a right of action to an employe for injuries received while in the service of a private corporation in certain cases, but denies the employe of an individual or copartnership, engaged in the same business, a right of action for an injury arising from the same cause and under the same conditions. It imposes new burdens on private corporations, while natural persons carrying on a like business and under like circumstances and conditions are left without any such burden. The right of action is made to depend upon the character of the employer and not upon the character of the employment.

In *Ballard* v. *Mississippi, etc., Oil Co., supra,* a statute providing that where the injury results from the negligence of a superior agent or officer, or of a person having the

right to direct or control the services of the person injured, every employe of any corporation shall have the same rights and remedies for an injury suffered by him from an act or omission of the corporation or its employes as are allowed by law to other persons not employes, and also providing that it shall constitute no defense that the injury results from the negligence of a fellow servant, or with the injured person's knowledge of defective appliances, and further providing that the provisions of the statute shall not be waived by contract, was held unconstitutional, because it imposed restrictions on all corporations, without reference to any difference arising out of. the nature of their business, which are not imposed upon natural persons, and thus denied to corporations the equal protection of the laws.

A statute of Minnesota provides: "Every railroad corporation owning or operating a railroad in this state shall be liable for all damages sustained by any agent or servant thereof by reason of the negligence of any other agent or servant thereof, without contributory negligence on his part, when sustained within this state, and no contract, rule, or regulation between such corporation and any agent or servant shall impair or diminish such liability: provided, that nothing in this act shall be so construed as to render any railroad company liable for damages sustained by any employe, agent, or servant, while engaged in the construction of a new road, or any part thereof, not open to public travel or use."

The supreme court of that state said concerning the same, in *Lavallee v. St. Paul, etc., R. Co., supra,* at page 251: "The objection made to the construction of the statute which the appellant contends for is that, upon that construction, the statute would be what is sometimes called class legislation, by imposing upon one class of persons liabilities from which other persons in precisely the same circumstances are exempt. It is to be presumed, unless the language used excludes such presumption, that the legislature does not in-

tend an act so to operate as to be open to that objection. Of course, the legislature must have the power to classify, when necessary, subjects for legislation, and make provisions for subjects within one class, without making them applicable to subjects in another; and the proper exercise of that power is not liable to the objection that it is class legislation. The practical limitation of the power to classify so as to avoid such imputation was stated by this court in *Nichols* v. *Walter* [1887], 37 Minn. 264, 33 N. W. 800, as 'that the classification shall be made upon some apparent natural reason, some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them.' Applying this test, it is impossible to avoid the conclusion that the statute, if construed as appellant claims it ought to be, would be class legislation, not applying upon the same terms to all in the same situation, nor having any apparent natural reason for any distinction. The frequency and magnitude of the dangers to which those employed in operating railroads are exposed; the difficulty, sometimes impossibility, of escaping from them with any amount of care, when they come; the fact that a great number of men are employed, coöperating in the same work, so that no one of them can know all the others, their competency, skill, and care, so that he may be said voluntarily to assume the risk arising from the want of skill or care by any one of the number, are sufficient reasons for applying a rule of liability on the part of the employer to the employe so employed different from that ordinarily applied between master and servant. But no just reason can be suggested why such difference should be founded, not on the character of the employment, nor of the dangers to which those employed are exposed, but on the character only of the employer. We can see why the employer's liability should be greater when the business is that of operat-

ing a railroad, but cannot see why one individual or corporation should be held to a rule of liability different from that applied to another, when the employment and its hazards are precisely the same."

In *Johnson* v. *St. Paul, etc., R. Co., supra,* at page 223, the court said concerning said statute: "In *Lavallee* v. *St. Paul, etc., R. Co.* [1889], 40 Minn. 249, in which this statute was fully considered, we held that it applied only to the peculiar hazards incident to the use and operation of railroads; that it must be construed as designed exclusively for the benefit of those who are, in the course of their employment, exposed to such hazards, and whose injuries are caused by them. And the more we consider the question, the more are we confirmed in the opinion that it is only when construed as subject to some such limitation that the statute can be sustained as a valid law. As was said in the case referred to, to avoid the imputation of 'class' legislation, the classification, in cases of special legislation, must be made 'upon some apparent, natural reason—some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them.' If a distinction is to be made as to the liability of employers to their employes, it must be based upon a difference in the nature of the employment, and not of the employers. One rule of liability cannot be established for railway companies, merely as such, and another rule for other employers, under like circumstances and conditions. * * * Neither would it relieve the act from the imputation of class legislation that it applies alike to all railroads. It has been sometimes loosely stated that special legislation is not class legislation, 'if all persons brought under its influence are treated alike under the same conditions.' But this is only half the truth. Not only must it treat alike, under the same conditions, all who

are brought 'within its influence,' but in its classification it must bring within its influence all who are under the same conditions.   Therefore, if a distinction is to be made between railway corporations and other employers as respects their liability to their employes, it must be based upon some difference in the nature of the employment, and can only extend to cases where such difference exists. *  *  *   Therefore, after mature consideration, our conclusion is that, if any limitation is to be placed by the courts upon the application of this statute (and on constitutional grounds there must be), the only one which will furnish any definite or logical rule is to hold that it only applies to those employes who are exposed to the peculiar hazards incident to the use and operation of railroads, and whose injuries are the result of such dangers."

In *Kline* v. *Minnesota Iron Co.* (1904), 93 Minn. 63, 66, 100 N. W. 681, the court said in reference to said statute:   "This statute has been before the court in numerous cases, and we have uniformly held that it was intended by the legislature to apply to 'railroad hazards,' and not to railroads as such; that the character of the employment was the test to be applied in determining its validity, and not the character of the employer.   It was first construed in *Lavallee* v. *St. Paul, etc., R. Co.* [1889], 40 Minn. 249, 41 N. W. 974, where it was held that, if the statute be held to apply to railroad corporations, as such, it would be invalid and unconstitutional as class legislation, for it is beyond the power of the legislature to single out a particular class of employers, and impose upon them a distinct rule of liability for personal injuries; but, if construed to apply to the character of the employment, the legislation was valid. It was accordingly held in that case that the legislature intended that it should apply to the hazards and dangers peculiar to the use and operations of railroads, and the decision there made has been followed in all subsequent

cases." See, also, *Jemming* v. *Great Northern R. Co.* (1905), 96 Minn. 302, 104 N. W. 1079-1081, 1 L. R. A. (N. S.) 696.

In 1862 the legislature of Iowa enacted a law (Acts 1862, p. 197) which provided that "every railroad company shall be liable for all damages sustained by any person, including employes of the company, in consequence of any neglect of the agents or by any mismanagement of the engineers, or other employes of the corporation to any person sustaining such damage." The supreme court of Iowa in *Akeson* v. *Chicago, etc., R. Co.* (1898), 106 Iowa 54, 56, 75 N. W. 676, said concerning said statutes: "The constitutionality of this statute was passed upon in *McAunich* v. *Mississippi, etc., R. Co.* [1866], 20 Iowa 338, and there placed upon precisely the same grounds as stated by Chief Justice Fuller in *Chicago, etc., R. Co.* v. *Pontius* [1895], 157 U. S. 209, 15 Sup. Ct. 585, 39 L. Ed. 675, when construing a similar statute of the state of Kansas. * * * The court, in order to uphold the constitutionality of the law, in *Deppe* v. *Chicago, etc., R. Co.* [1873], 36 Iowa 52, limited the term 'employes' to those engaged in operating the railroad. * * * *Johnson* v. *St. Paul, etc., R. Co.* [1890], 43 Minn. 222, 45 N. W. 156, 8 L. R. A. 419; *Missouri, etc., R. Co.* v. *Mackey* [1888], 127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Chicago, etc., R. Co.* v. *Pontius, supra; Bucklew* v. *Central Iowa R. Co.* [1884], 64 Iowa 603, 21 N. W. 103."

The court said in *Deppe* v. *Chicago, etc., R. Co., supra,* on page 55: "But if the statute be so construed as to apply to all persons in the employ of railroad corporations without regard to the business they are employed in, then it would be a clear case of class legislation, and would not apply upon the same terms to all in the same situation, and hence would be unconstitutional, and manifestly so. To illustrate: Suppose a railroad company employ several persons to cut the timber on its right of way where it is

about to extend its road, and the landowner employs a like · number of persons to cut the timber on a strip of equal length alongside such right of way.   If one of each set of employes shall be injured by the negligence of a co-employe, and the employe of the railroad company can, under the statute, maintain an action against his employer and the other cannot, then it is clear that the law does not apply upon the same terms to all in the same situation.   The law, then, would not have uniform operation, but would be violative of the constitution just as much as a law that should prescribe, under the same circumstances, different liabilities for merchants, for mechanics, and for laborers.   The manifest purpose of the statute was to give its benefits to employes engaged in the hazardous business of operating railroads.   When thus limited it is constitutional; when extended further it becomes unconstitutional."   See, also, 2 Labatt, Master and Serv., §646 and notes.   The employers' liability act of Kansas was the same as the Iowa act above set out (*Missouri Pac. R. Co.* v. *Haley* [1881], 25 Kan. 35, 53), and the supreme court of that state, following the construction given by the Iowa supreme court, held in *Missouri Pac. R. Co.* v. *Haley, supra,* page 53, that it "embraced only those persons exposed to the hazards of the business of railroading." *Missouri, etc., R. Co.* v. *Medaris* (1899), 60 Kan. 151, 154, 155, 55 Pac. 875; *Missouri Pac. R. Co.* v. *Mackey* (1885), 33 Kan. 298, 302, 6 Pac. 291.

It was held, in effect, by this court, in *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 8-14, 71 Am. St. 300, that the employers' liability act of this State was capable of severance, by putting railroads in a class by themselves, and that such classification was proper on account of the dangerous and hazardous business of the operation of railroads, and that, so construed, said act, as applied to railroads, was not in violation of either said §23, article 1, of the Constitution of this State or of the fourteenth

amendment of the Constitution of the United States, even if unconstitutional as to the other employers and employes mentioned. In *Tullis* v. *Lake Erie, etc., R. Co.* (1899), 175 U. S. 348, 20 Sup. Ct. 136, 44 L. Ed. 192, it was held that this court in the case of *Pittsburgh, etc., R. Co.* v. *Montgomery, supra,* treated the employers' liability act as practically the same as said statutes of Iowa and Kansas, and that, so construed, it did not arbitrarily classify railroads by name, but with regard to the business in which they were engaged, which was a proper classification on account of the dangerous and hazardous business of operating railroads, citing *Missouri Pac. R. Co.* v. *Mackey, supra,* and *Minneapolis, etc., R. Co.* v. *Herrick* (1888), 127 U. S. 210, 8 Sup. Ct. 1176, 32 L. Ed. 109, which sustained the constitutional validity of a like statute.

In *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), *ante,* 438, this court approved the case of *Pittsburgh, etc., R. Co.* v. *Montgomery, supra,* which gave the employers' liability act, as applied to railroads, practically the same construction as had been given the statutes of Iowa and Kansas on that subject, and held that putting railroads in a class by themselves was proper classification, on account of the dangerous and hazardous business of operating railroads, and that such classification is not based upon the difference in employers but upon the difference in the nature of the employment.

In *Connelly* v. *Union Sewer Pipe Co.* (1902), 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, the court in speaking of an anti-trust statute of Illinois, which exempted from its application producers of agricultural products and raisers of live stock, said: "The fourteenth amendment, in declaring that no state 'shall deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary

spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcements of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses.' *Barbier* v. *Connolly* [1885], 113 U. S. 27, 31, 5 Sup. Ct. 357, 28 L. Ed. 923. This language was cited with approval in *Yick Wo* v. *Hopkins* [1886], 118 U. S. 356, 369, 6 Sup. Ct. 1064, 30 L. Ed. 220, in which it was also said that 'the equal protection of the laws is a pledge of the protection of equal laws.' In *Hayes* v. *Missouri* [1887], 120 U. S. 68, 71, 7 Sup. Ct. 350, 30 L. Ed. 578, we said that the fourteenth amendment required that all persons subject to legislation limited as to the objects to which it is directed, or by the territory within which it is to operate, 'shall be treated alike, under like circumstances and considerations, both in the privileges conferred, and in the limitations imposed.' 'Due process of law and the equal protection of the laws,' this court has said, 'are secured, if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government,' *Duncan* v. *Missouri* [1894], 152 U. S. 377, 382, 14 Sup. Ct. 570, 38 L. Ed. 485. * * * These principles, applied to the case before us, condemn the statute of Illinois. We have seen that under that statute all except producers of agricultural commodities and raisers of live stock, who combine their

capital, skill or acts for any of the purposes named in the act, may be punished as criminals, while agriculturists and live stock raisers, in respect of their products or live stock in hand, are exempted from the operation of the statute, and may combine and do that which, if done by others, would be a crime against the state. The statute so provides notwithstanding persons engaged in trade or in the sale of merchandise and commodities, within the limits of a state, and agriculturists and raisers of live stock are all in the same general class, that is, they are all alike engaged in domestic trade, which is, of right, open to all, subject to such regulations, applicable alike to all in like conditions, as the state may legally prescribe. The difficulty is not met by saying that, generally speaking, the state when enacting the laws may, in its discretion, make a classification of persons, firms, corporations, and associations, in order to subserve public objects. For this court has held that classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis. * * * But arbitrary selection can never be justified by calling it classification. The equal protection demanded by the fourteenth amendment forbids this. * * * No duty rests more imperatively upon the courts than the enforcement of those constitutional provisions intended to secure that equality of rights which is the foundation of free government. * * * It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the fourteenth amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection.' *Gulf, etc., R. Co.* v. *Ellis* [1897], 165 U. S. 150, 155, 159, 160, 165, 17 Sup. Ct.

255, 41 L. Ed. 666. These principles were recognized and applied in *Cotting* v. *Kansas City Stock-Yards Co.* [1901], 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, in which it was unanimously agreed that a statute of Kansas regulating the charges of a particular stock-yards company in the state, but which exempted certain stock-yards from its operation, was repugnant to the fourteenth amendment, in that it denied to that company the equal protection of the laws."

It cannot be denied, however, that in the present industrial conditions the co-servant doctrine, which had for its basis, to some extent, at least, the idea that the servant could know and estimate the character of his associates, and that the safety of the common service was promoted by placing that burden on him (Pollock, Torts [6th ed.], pp. 95, 96; Pollock, Essays on Jurisprudence and Ethics, p. 141; *Farwell* v. *Boston, etc., R. Co.* [1842], 45 Mass. 49, 58, 59, 38 Am. Dec. 339, 342, 343) has, when applied to the facts in many cases, become arbitrary, rather than a reasonable rule of law. It was said by Chief Justice Shaw, in *Farwell* v. *Boston, etc., R. Co., supra,* which is said to be the fountain head of all the later decisions on the fellow-servant doctrine: "Where several persons are employed in the conduct of one common enterprise or undertaking, and the safety of each depends much on the care and skill with which each other shall perform his appropriate duty, each is an observer of the conduct of the others, can give notice of any misconduct, incapacity, or neglect of duty, and leave the service, if the common employer will not take such precautions, and employ such agents as the safety of the whole party may require. By these means the safety of each will be much more effectually secured, than could be done by a resort to the common employer for indemnity in case of loss by the negligence of each other."

From old conditions, in which an industry was carried on with a few comparatively simple tools, and by the aid of a limited number of men, well known to each other, there has been evolved, through machinery, the aggregation of capital, and the development of the directing mind, a condition, in which, amid the power of machinery, the servant frequently works in an industrial plant, so great that the united energies of hundreds or thousands of men are required for its operation. In such case the number of employes may be so numerous that no one of them can be reasonably expected to know all the others, their competency, skill, and care, so that he may justly be said voluntarily to assume the risk arising from their want of skill or care. In view of this, every one must realize that there is a reasonable ground for the essential idea of the employers' liability legislation; but the fact must not be forgotten that the small industry still exists, and that, under the convenient form of corporate capacity, men still carry on industrial undertakings which are in no essential particular different from those which are carried on by co-partnerships and individuals. It is this fact which makes a classification on the basis of the character of the employer inherently vicious. True, the corporation, under our laws and industrial system, has in it the seeds of tremendous growth; but, as the real evil can be reached by a classification which goes to those elements which, to some extent, have removed the reason for the co-servant rule, there is not even a color of an excuse for imposing burdens on the corporate employer, while its competitor, a natural person, who is carrying on a like business, under the same conditions, is left without any such burden. If said corporations, as such, are to have legislative burdens put upon them, as by the law in controversy, then all who ought to be put in their class should be included, or, if this appears to the legislative mind as improper, owing to differences in the character of the employments, then legislation should

have for its basis a classification which rests on such differences in the various employments as would make a distinction between them appear to be warranted.

It is insisted, however, that even if said employers' liability act is unconstitutional, as claimed, appellant, being an employer, does not belong to the aggrieved class,

5. and cannot insist that said act is unconstitutional as to employes who are denied the benefit thereof, citing *Pittsburgh, etc., R. Co.* v. *Montgomery* (1898), 152 Ind. 1, 13, 71 Am. St. 301. In the case last cited this court held that railroads could not raise the question of the constitutionality of the employers' liability act as to "other" corporations, because said act put railroads in a class by themselves, and that said act was constitutional as to railroads, even if unconstitutional as to other corporations. It cannot be said, however, that, if said act is unconstitutional as to the employes of a private corporation, such corporation cannot raise the question of the constitutionality of such law in an action thereunder against it; for such a law, if unconstitutional, is no law, and cannot be used to give appellee a right of action against appellant. Black, Const. Law, p. 64. *Sumner* v. *Beeler* (1875), 50 Ind. 341, 342, 19 Am. Rep. 718; *Norton* v. *Shelby County* (1886), 118 U. S. 425, 442, 6 Sup. Ct. 1121, 30 L. Ed. 178; *Connelly* v. *Union Sewer Pipe Co., supra.* However, as said act attempted to impose a burden upon appellant which was not imposed upon individuals and copartnerships engaged in a like business under the same conditions, appellant clearly had the right to raise the question of the constitutionality thereof.

It is claimed, in effect, that the employers' liability act must be treated as an amendment of the law or laws under which railroad and other corporations are organized

6. in this State, and that, when so treated, appellee cannot, if a domestic corporation, object to the same. Said employers' liability act has been held to apply not only

to railroad corporations proper, but to apply to other kinds of corporations, as well as individuals, engaged in the business of operating railroads. *Pittsburgh, etc., R. Co. v. Lightheiser, supra.* The words "other corporations," used in said act, not only apply to private corporations existing under the laws of this State, but to foreign corporations doing business in this State, and in no way indebted to this State for their charters. The legislature of this State has no power to alter, amend, or repeal the charter of a foreign corporation, or the law under which it is organized. It is evident, therefore, that said act cannot be regarded as an amendment of the different incorporation laws of this State. *Missouri, etc., R. Co.* v. *Medaris* (1899), 60 Kan. 151, 156, 55 Pac. 875; note to *St. Louis, etc., R. Co.* v. *Paul* (1897), 62 Am. St. 154, 181; *Johnson* v. *Goodyear Mining Co.* (1899), 127 Cal. 4, 59 Pac. 304, 78 Am. St. 17, 29-31, 47 L. R. A. 338, 344. See, also, *State* v. *Haun* (1899), 61 Kan. 146, 149-152, 59 Pac. 340, 47 L. R. A. 369.

This conclusion renders it unnecessary for us to determine whether the power to amend the incorporation laws, or any of them, has been reserved by the legislature. The legislature has the power to prohibit foreign corporations from doing business in this State and to prescribe the conditions upon which they may engage in business in this State; but, as said act applies alike to corporations foreign and domestic, it is clear that it was not passed for such purpose.

It is evident that the employers' liability act (Acts 1893, p. 294, §7083 *et seq.* Burns 1894), of this State, so far as it applies to "other corporations" is in violation of the fourteenth amendment of the Constitution of the United States. As said act is unconstitutional for the reason given, it is not necessary to decide what effect, if any, the exception of municipal corporations from the operation

thereof has upon the question of its constitutionality. It follows that the court erred in overruling the demurrer to the third paragraph of the complaint.

The first and second paragraphs of the complaint were based upon the alleged failure of appellant to provide a safe place for appellee to work.

It is true that an employer is bound to exercise ordinary care to furnish an employe with a reasonably safe place to work and to exercise ordinary care to keep it in that condition. The employer, however, is not liable to his employe for the negligence of his co-servants in respect to the details of the work, nor is he bound to protect his employe against the mere transitory perils that the execution of the work occasions, nor is he liable merely because a fellow servant negligently handles appliances in such a way as to occasion injury to an employe. *Southern Ind. R. Co.* v. *Harrell* (1904), 161 Ind. 689, 698-700, 63 L. R. A. 460, and cases cited; *Hodges* v. *Standard Wheel Co.* (1899), 152 Ind. 680, 686; *Dill* v. *Marmon* (1905), 164 Ind. 507, 515-523, 69 L. R. A. 163, and cases cited; *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280; *Ft. Wayne Iron, etc., Co.* v. *Parsell* (1907), *ante,* 223, and cases cited; *McElwaine-Richards Co.* v. *Wall* (1906), 166 Ind. 267, and cases cited; *Russell* v. *Lehigh Valley R. Co.* (1907), (N. Y.) 81 N. E. 122, and cases cited; note to *Tedford* v. *Los Angeles Electric Co.* (1901), 54 L. R. A. 85, 106-113. Under these rules, said first and second paragraphs were not sufficient, and the demurrer thereto for want of facts was erroneously overruled.

The judgment is reversed, with instructions to sustain the demurrer to each paragraph of the complaint, and for further proceedings not inconsistent with this opinion.